IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IAN S. MENDELSON,

    Plaintiff,

    v.

SOUTHEAST MORTGAGE OF
GEORGIA, INC. and THOMPSON,
O'BRIEN, KEMP & NASUTI, P.C.,

    Defendants.

CIVIL ACTION FILE NO.
1:11-CV-03155-TWT-GGB

## FINAL REPORT AND RECOMMENDATION

## AND ORDER

Plaintiff Ian Mendelson ("Plaintiff") filed this federal court action on September 16, 2011 against Defendants Southeast Mortgage of Georgia, Inc. ("SEM") and the law firm Thompson, O'Brien, Kemp & Nasuti, P.C. ("TOKN") (collectively, "Defendants"), alleging multiple causes of action arising out of Plaintiff's efforts to purchase a home located at 767 Adair Avenue, Atlanta, Georgia (the "Property").

This action is before the Court on the following motions:

    (1)    Defendant TOKN's Motion to Dismiss (Doc. 5);

    (2)    Defendant SEM's Motion to Dismiss (Doc. 10);

(3)     Plaintiff's Motion to Exceed Page Limitations
        (Doc. 21);

(4)     Plaintiff's Motion to Convert Motions to
        Dismiss to Motions for Summary Judgment
        (Doc. 30);

(5)     Defendant SEM's Motion to Supplement
        (Doc. 35) SEM's Motion to Dismiss (Doc. 10);

(6)     Defendant TOKN's Motion for Leave to File
        Supplemental Brief (Doc. 36) in Support of
        TOKN's Motion to Dismiss (Doc. 5);

(7)     Plaintiff's Motion to Strike (37) Motions to
        Supplement (35, 36); and

(8)     Plaintiff's Motion for Leave to File Notice of
        Supplemental Authority (Doc. 45).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint alleges that in late August 2010, Plaintiff decided to purchase the subject Property to be used as his primary residence.  He entered into an agreement on August 25, 2010 with the owner/seller to purchase the house for $250,000 with the stipulation that the closing had to take place on or before September 17, 2010.  The "Affidavit and Memorandum of Agreement for Purchase and Sale" that Plaintiff executed (and that was later filed in the real property records of the Superior Court of Fulton County, Georgia) shows the "Property buyer" as "Allied Property Group, LLC,"

AO 72A
(Rev.8/82)

a company owned by Plaintiff. (Doc. 10-3). The earnest money deposit also was made in the name of Allied Property Group, LLC. (Doc. 10-4).[1] Time was of the essence.

Plaintiff contacted SEM to inquire about obtaining a loan to purchase the property that could close on or before September 17, 2010. SEM promised Plaintiff that it would meet that deadline. Plaintiff filled out the paperwork to apply for the loan. SEM provided a Good Faith Estimate ("GFE") to Plaintiff, dated August 31, 2010, giving Plaintiff an estimate of his settlement charges and loan terms, if approved for the loan. (Doc. 1-4 at 1). The estimated amount of the loan for the purchase of the Property was $237,500.00, the loan term was 30 years, and the initial interest rate was 4.375%. (Id.).

---

[1] In reviewing the merits of Defendants' motions to dismiss, the Court has taken into consideration the documents attached as exhibits, without converting the motions to motions for summary judgment, because in Plaintiff's complaint, Plaintiff refers to the transactions memorialized in the exhibits, the documents are central to Plaintiff's claims, and the authenticity of the documents has not been challenged and/or the documents are matters of public record. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997)("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal"); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)(stating that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam)(unpublished) ("We have held that a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.")(citations omitted).

AO 72A
(Rev.8/82)

On September 16, 2010, the evening before the scheduled closing, SEM's representative informed Plaintiff that SEM's underwriters would not allow the loan to close as an owner-occupied residence; SEM would only approve the loan as an investment purchase under terms that were less favorable than those in the GFE. SEM provided to Plaintiff a second GFE with the new terms.[2] (Doc. 1-7 at 1-3). Because Plaintiff felt under duress and faced a potential loss if he did not go through with the purchase, Plaintiff elected to go forward with the closing on September 17, 2010 under the revised terms (the "Loan"). In connection with the Loan, Plaintiff executed a promissory note (the "Note") and a security deed (the "Security Deed") in favor of SEM, secured by the Property. (Doc. 10-5, Security Deed).

At the closing, Plaintiff also signed and executed an "Occupancy and Financial Status Affidavit" representing that the purchase of the Property was solely for investment purposes. (Doc. 10-5 at 18-19). The affidavit is dated September 17, 2010. (Id.). Under Section 2, "Occupancy," Plaintiff checked the box for "Investment" and made the following representation:

---

[2] In the second GFE, the loan amount was $200,000.00, the term was 30 years, the interest rate was 5.000%, and the required down payment was larger than in the first GFE.

The Property is owned and held by Borrower as an investment property. Borrower does not now occupy or use the property, and has no present intention to occupy or use the Property in the future, either as Borrower's principal residence or second home. Borrower now occupies and uses other property or properties as Borrower's principal residence and/or second home.

(Doc. 10-5 at 18-19).

Plaintiff alleges that after the closing, he became aware that several of the documents provided to him for his signature on the day of the closing had been backdated to September 13, 2010 and contained certain other erroneous and misleading information. (Compl. ¶¶ 23-24).

Plaintiff contacted SEM to complain, and after correspondence between Plaintiff and SEM, SEM offered to reissue the loan to Plaintiff under the terms of the first GFE, and Plaintiff accepted that offer. SEM then reneged on the offer, and elected instead to accelerate the loan pursuant to the terms of the Security Deed that Plaintiff had signed with SEM to secure the Loan.

On October 22, 2010, SEM sent Plaintiff a demand letter accelerating the loan and asserting that Plaintiff was in default due to alleged misrepresentations made in connection with Plaintiff's loan application. (Doc. 1-14). Plaintiff alleges that the purported bases for his default were not true. Plaintiff further alleges that TOKN, acting in the capacity of a debt collector on behalf of SEM, sent Plaintiff at least two demand

AO 72A
(Rev.8/82)

letters in which TOKN erroneously asserted that Plaintiff was in default on the loan, threatened foreclosure, and made wrongful demands for payment.

On or about November 24, 2010, Plaintiff filed a lawsuit against SEM in the Superior Court of Gwinnett County, Georgia, Case No. 10-A-10588-6 ("Gwinnett County Lawsuit"). That case was later voluntarily dismissed. On September 16, 2011, Plaintiff filed the current action in federal court against SEM and TOKN. On or about October 11, 2011, Defendants filed the instant motions to dismiss (Docs. 5, 10), and a number of other related motions are also pending before the Court. (Docs. 21, 30, 35, 36, 37 & 45). The motions have been fully briefed and are ripe for consideration.

## II. CAUSES OF ACTION

### A. Plaintiff's Federal Claims Against SEM

Plaintiff's complaint alleges the following two federal causes of action against SEM: Violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the Dodd-Frank Wall Street Reform and Consumer Protection Act, P.L. 111-203, July 21, 2010, 124 Stat. 1376 (Count One); and Violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* (Count Two).

### B. Plaintiff's State Law Claims Against SEM

Plaintiff's state law claims against SEM are: Wrongful Foreclosure (and/or Wrongful Attempted Foreclosure) (Count One); Breach of Contract(s) and Breach of

Covenant of Good Faith and Fair Dealing (Count Two); Duress (Count Three); Mortgage Fraud/Forgery (Count Four); Violation(s) of the Georgia Fair Business Practices and Uniform Deceptive Trade Practices Acts (Count Five); Negligence (Count Six); Violations of the Georgia Fair Lending Act [O.C.G.A. § 7-6A-1, *et seq.*] (Count Seven); Promissory Estoppel (Count Eight); Fraud and Misrepresentation (Count Nine); Conversion (Count Ten); Defamation-Slander-Libel (Count Eleven); Unjust Enrichment (Count Twelve); and General Liability (Count Thirteen).

## C.   **Plaintiff's Federal Claim Against TOKN**

Plaintiff's sole claim against TOKN is for Violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  (See Compl. at 43, Section C, Count One).

## III.   **MOTIONS TO SUPPLEMENT MOTIONS TO DISMISS**

As a preliminary matter, I will address whether Defendants should be permitted to supplement their motions to dismiss to include facts and argument related to the prior lawsuit filed by Plaintiff in the Gwinnett County Superior Court against SEM on or about November 24, 2010.

In their motions to supplement (Docs. 35, 36), Defendants argue that an order entered on February 10, 2012 by Gwinnett County Superior Court Judge Ronnie Batchelor in the prior Gwinnett County Lawsuit requires that this case be dismissed

7

under the doctrines of res judicata and/or collateral estoppel. (See Doc. 35-2, "Final Order, Findings of Fact and Conclusions of Law" [hereinafter, "Order"]).

This Court has discretion to allow a supplemental motion to dismiss. See Lindsey v. United States, 448 F. Supp. 2d 37, 55-56 (D.D.C. 2006) (allowance of supplemental motion to dismiss is in court's discretion where motion to dismiss is still pending and no undue delay would result), *abrogated on separate grounds*, Ramer v. United States, 620 F. Supp. 2d 90, 99 (D.D.C. 2009). In light of the fact that the Gwinnett County Superior Court Order was issued after the motions to dismiss in this case were filed, the motions were still pending, and the supplements bring to the Court's attention dispositive facts, I will exercise my discretion to **GRANT** Defendants' Motions to Supplement (Docs. 35, 36) and **DENY** Plaintiff's Motion to Strike (Doc. 37).

As discussed below, I have concluded that the Gwinnett County proceedings require the dismissal of the federal claims and several of the state law claims, and that the remaining state law claims should be dismissed because they are based solely on pendent jurisdiction. Therefore, I will focus my discussion on the arguments that the parties have made in their supplemental rather than their original briefs on the Motions to Dismiss. I will now turn to the facts and effect of the proceedings in the prior Gwinnett County Lawsuit.

AO 72A
(Rev.8/82)

## IV.  GWINNETT COUNTY LAWSUIT

### A.    Prior Proceedings

As mentioned above, before filing the instant lawsuit in federal court, Plaintiff filed a lawsuit on November 24, 2010 in the Superior Court of Gwinnett County, Georgia, against SEM based on the same facts and concerning the same Property that form the basis of this case.  Like the current complaint, Plaintiff's Gwinnett County Lawsuit alleged, *inter alia*, wrongful foreclosure, breach of contract, promissory estoppel, and violation of the Truth in Lending Act in connection with the same loan that is the subject of the instant case.  Plaintiff initially obtained an ex parte temporary protective order in the Gwinnett County Lawsuit.  After a hearing on December 21, 2010, the Gwinnett County Superior Court declined to extend the temporary protective order and refused to order an interlocutory injunction.  (Doc. 35-2 at 1-2).

At the end of January 2011, Plaintiff tendered a payoff of the accelerated principal and interest on the Loan.  SEM executed and recorded a quitclaim deed of release.  (Id.). Nevertheless, Plaintiff continued to pursue his claims and make discovery demands and threats to pursue sanctions.  Despite seeking and obtaining discovery extensions and continuances from trial calendars to accommodate Plaintiff's requests for additional documents and depositions, Plaintiff never noticed any depositions in the matter.  (Id. at 2).  SEM filed a partial motion for summary judgment on July 28, 2011.  A joint

mutual dismissal without prejudice was filed on August 19, 2011 before Plaintiff's response brief was due.

Within two weeks of filing the dismissal, Plaintiff, through new counsel, demanded that SEM pay $75,000.00 or Plaintiff would file a lawsuit in federal court against SEM and its law firm, TOKN. SEM rejected Plaintiff's demand, and Plaintiff filed the instant lawsuit in federal court against SEM and TOKN, asserting essentially the same causes of action as the Gwinnett County Lawsuit, as well as additional claims, including a claim for forgery and an FDCPA claim against TOKN. (Id.; see also Doc. 42-1 at 2).

On September 7, 2011, SEM filed a motion for attorneys' fees and expenses of litigation in the Gwinnett County Lawsuit, pursuant to Georgia's frivolous litigation statute, O.C.G.A. § 9-15-14.[3] The parties filed briefs, and the Gwinnett County Superior

---

[3] O.C.G.A. § 9-15-14 is entitled, "Attorney's fees and expenses of litigation where attorney brings or defends action lacking substantial justification." The statute provides, in relevant part:

(a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position,

10

Court judge held a hearing on the motion. (Id.). On February 10, 2012, the Gwinnett County Superior Court judge issued a "Final Order, Findings of Fact and Conclusions of Law" granting SEM's motion and awarding $45,967.63 to SEM, pursuant to O.C.G.A. § 9-15-14(a) and (b), for "having to defend against Plaintiff's groundless and frivolous claims and Plaintiff's unnecessary expansion of the proceedings." (Doc. 35-2 at 4).

In its Final Order, the court stated that it heard argument and statements of counsel, considered all of the evidence and the entire record, and made the following findings of fact and conclusions of law:

> The Court concludes that Plaintiff, through counsel, pursued claims that lacked substantial justification under O.C.G.A. § 9-15-14(a) in that the Court further concludes that Plaintiff

---

or against that party's attorney, or against both in such manner as is just.

(b) The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

Id.

defaulted on his obligations under the loan by submitting false and misleading information to Defendant to procure the loan from Defendant, and that Defendant was authorized to exercise all legal and contractual remedies allowed to it under the loan documents and applicable law, and accordingly Plaintiff was not entitled to declaratory judgment, injunctive relief, and Plaintiff possessed no valid claim for wrongful foreclosure or attempted wrongful foreclosure. The Court further concludes that Defendant breached no contract with Plaintiff, that Plaintiff in fact committed the breach by supplying false and misleading information in the loan application process. The Court concludes that there was no second contract made after the closing, as there was no agreement on all the essential elements of a contract, in writing, to properly modify the loan documents at closing. Further, even were there a sufficient writing or agreement, any agreement was rendered moot by the payment of the accelerated principal and interest by Plaintiff, there was insufficient consideration for any new agreement, and Plaintiff breached any agreement with Defendant, by submitting false and misleading information to Defendant in the loan process. Based on all the surrounding circumstances of this loan, the Court further concludes that the Federal Truth in Lending Act does not apply to this loan as the loan was for investment, or business purposes, and is thus expressly exempted from the provisions of said Act. The Court further concludes that any reliance by Plaintiff on the terms of a good-faith estimate was not reasonable and could not form the basis for a claim of promissory estoppel. The Court concludes that Plaintiff's claims could not be supported under the law.

The Court further concludes that Plaintiff's claims lacked substantial justification, for all the reasons discussed above, and that Plaintiff, through counsel, further unnecessarily expanded the proceedings under § 9-15-14 (b) in that the Court further concludes that Plaintiff engaged in unreasonable discovery demands and pursuit of the same cause of action in

another forum, after the payoff of the principal and interest of the loan.

(Doc. 35-2 at 3-4).

Thereafter, Plaintiff filed an Application for Discretionary Appeal to the Georgia Court of Appeals, which was denied on April 10, 2012. (Doc. 44-1).

**B.** **Judicial Notice**

This Court may take judicial notice of the Gwinnett County Superior Court Order and consider whether it has preclusive effect without converting the Defendants' motions to dismiss into motions for summary judgment. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (finding that district court properly took judicial notice of documents which were public records "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.")(citations omitted).

**C.** **Effect of Gwinnett County Superior Court Order**

Defendants argue that Plaintiff's claims are precluded by the Gwinnett County Superior Court's Order under principles of res judicata or collateral estoppel.

> The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court.... Res judicata comes in two forms: claim preclusion (traditional "res judicata") and issue preclusion (also known as "collateral estoppel").

13

Community State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011)(citing Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598, 68 S. Ct. 715 (1948)).  In considering whether to give preclusive effect to a Georgia state court judgment under res judicata or collateral estoppel, the federal court must apply Georgia law.  Id.

Under Georgia law, a party relying on collateral estoppel must demonstrate that (1) an identical issue, between identical parties (or their privies), (2) was actually litigated and (3) necessarily decided, (4) on the merits in a final judgment, (5) by a court of competent jurisdiction.  See id.  Claim preclusion and issue preclusion have the same elements except that claim preclusion requires an identical cause of action.  Id.; Karan, Inc. v. Auto-Owners Ins. Co., 280 Ga. 545, 546, 629 S.E.2d 260, 262-63 (2006) ("[C]ollateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies ... [where] those issues ... actually were litigated and decided in the previous action, or ... necessarily had to be decided in order for the previous judgment to have been rendered."); see also O.C.G.A. § 9-12-40.  Here, because the state court judge retained jurisdiction to consider SEM's § 9-15-14 motion for attorneys' fees after the underlying case had been dismissed, see Harris v. Werner, 278 Ga. App. 166, 167-68, 628 S.E.2d 230, 232 (2006), I believe that the proper analysis is under issue preclusion (collateral estoppel) rather than claim preclusion (traditional res judicata).

14

With regard to Plaintiff and SEM, it is undisputed that the parties are identical. I will therefore proceed to analyze whether there was an identical issue that was litigated and necessarily decided on the merits, and whether the state court had jurisdiction to issue its Order. I will also address whether the issues decided in the state court are dispositive of this case. Finally, I will address and discuss TOKN's motion to dismiss and motion to supplement.

### 1. Identical Issue (between Identical Parties or their Privies)

Issue preclusion applies only when the same issue has been decided in one case and arises in another. 18 Charles Alan Wright, Arthur R. Miller, et al., <u>Federal Practice and Procedure</u> § 4417 (2d ed. 2002). Many of the issues decided in the Gwinnett County Lawsuit clearly arise in the current case. The Gwinnett County Superior Court Order specifically found, *inter alia*, that: (1) Plaintiff defaulted on his obligations under the Loan by submitting false and misleading information to SEM; (2) Plaintiff possessed no valid claim for wrongful foreclosure or attempted wrongful foreclosure; (3) SEM did not breach a contract with Plaintiff; (4) TILA does not apply to the subject Loan because the Property was for investment or business purposes; and (5) any reliance by Plaintiff on the terms of a good-faith estimate was not reasonable and could not form the basis for a claim of promissory estoppel. (Doc. 35-2).

15

All of these findings are on issues that also arise in this federal case. Therefore, as to these issues, SEM has demonstrated that the issues in both cases are identical.

## 2. Actually Litigated

In the prior litigation, Plaintiff must have been accorded a full and fair opportunity to litigate the issues in question before the state court judgment can be given preclusive effect. Fowler v. Vineyard, 261 Ga. 454, 458, 405 S.E.2d 678, 682 (1991). Plaintiff argues that he was not given a full and fair opportunity to litigate the issues because his state court action was voluntarily dismissed without prejudice before he had an opportunity to respond to SEM's motion for summary judgment.

However, the Gwinnett Superior Court Order shows that Plaintiff was given an opportunity to, and did, present evidence at his interlocutory injunction hearing on December 21, 2010. (Doc. 35-2 at 2). Even though Plaintiff voluntarily dismissed his Gwinnett County case before responding to SEM's motion for summary judgment, Plaintiff was given another full and fair opportunity to litigate the issues raised in SEM's motion for attorney's fees. The issues raised by that motion were briefed, and argued orally at a hearing held on the motion on November 4, 2011. (Doc. 35-2 at 4 n.1). Thereafter, Plaintiff had an opportunity to petition the Georgia Court of Appeals for a discretionary appeal, and he filed a detailed statement of facts and argument with the appellate court. (Doc. 42-1).

16

The Eleventh Circuit case cited above, <u>Community State Bank v. Strong</u>, 651 F.3d 1241, 1267-68 (11th Cir. 2011), illustrates that a state court order may be given preclusive effect even if it is issued on a motion for sanctions rather than on a motion for summary judgment or trial.  <u>See</u> <u>id.</u> at 1270 (explaining that under Georgia law, the on-the-merits requirement can be satisfied even if the court does not pass directly on the substance of the claim).  In <u>Community State Bank</u>, the Eleventh Circuit gave preclusive effect to a state court judgment that was issued as a sanction for willful discovery abuses. <u>Id.</u> at 1268 (citing <u>Cleland v. Gwinnett County</u>, 226 Ga. App. 636, 638, 487 S.E.2d 434, 436 (1997)(issues are "actually litigated" if they are "contested" by the parties)); <u>see also</u> <u>In re Daily</u>, 47 F.3d 365, 368 (9th Cir. 1995)(affirming bankruptcy court's decision to give preclusive effect to default judgment issued as a sanction for failure to provide discovery); <u>In re Quarterman</u>, No. 09-65818-MGD, 2010 WL 4642471, at *6 (Bankr. N.D. Ga. Aug. 23, 2010)(finding that party had a "full and fair opportunity" to litigate in state court action for attorney's fees pursuant to O.C.G.A. § 9-15-14(a)-(b) and giving preclusive effect to order in that action that decided case was frivolous).

Moreover, in considering whether to give preclusive effect to state court judgments, the federal court must apply the state's law of preclusion.  Georgia courts have concluded that O.C.G.A. § 9-15-14 is a valid basis for the application of collateral estoppel.  <u>See, e.g.</u>, <u>Freeman v. Wheeler</u>, 277 Ga. App. 753, 755-56, 627 S.E.2d 86, 89

AO 72A
(Rev.8/82)

(2006)(rejecting plaintiff's argument that O.C.G.A. § 9-15-14 cannot be used as the basis for collateral estoppel).

### 3. Necessarily Decided

Plaintiff next argues that the Order's findings were dicta or non-essential and thus should not be given preclusive effect. "Issue preclusion attaches only to determinations that were necessary to support the [court's] judgment entered in the first action." 18 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 4421 (2012). Here, to comport with O.C.G.A. § 9-15-14, the Gwinnett County court had to determine whether Plaintiff pursued claims that lacked substantial justification, and was required, under Georgia law, to make express findings of facts and conclusions of law. See Moore v. Moore, 307 Ga. App. 889, 706 S.E.2d 465 (2011). A court "necessarily" decides issues that are appropriate in justifying the remedy that it orders. See McFadden Bus. Publ'ns, Inc. v. Guidry, 177 Ga. App. 885, 888, 341 S.E.2d 294, 297 (1986). It is not a defense to a claim of issue preclusion that a court's ruling could have been narrower. See 18 Wright, Miller, et al., Fed. Prac. and Proc. § 4421 (collecting cases). Because the Gwinnett County court first had to analyze whether Plaintiff pursued claims that lacked substantial justification in order to determine whether attorney's fees were warranted and/or justified, I find that the Gwinnett County court necessarily ruled on the merits of Plaintiff's claims against SEM.

18

### 4.      Final Judgment on the Merits

Plaintiff next argues that the Gwinnett County Order is not a final judgment on the merits.  However, once the Order was entered, nothing further remained pending in the Gwinnett County Superior Court, and the Order was appealable under O.C.G.A. § 5-6-35(a)(10).  Although the preclusive effect of a judgment is suspended while the order is on appeal, <u>see</u> O.C.G.A. § 9-12-19, a judgment becomes final for all purposes upon the conclusion of the appeals process.  <u>Community State Bank</u>, 651 F.3d at 1266. As the Georgia Supreme Court has previously held, the denial of an application for discretionary appeal is an adjudication on the merits of the underlying order and acts as res judicata in subsequent proceedings.  <u>See</u> <u>Hook v. Bergen</u>, 286 Ga. App. 258, 260, 649 S.E.2d 313, 316 (2007) (citing <u>Northwest Social & Civic Club v. Franklin</u>, 276 Ga. 859, 860, 583 S.E.2d 858 (2003); <u>see also</u> O.C.G.A. § 9-11-60(h) ("any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be"); § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.")).

AO 72A
(Rev.8/82)

In the Gwinnett County litigation, the trial court issued its Final Order on February 10, 2012, awarding attorney's fees and expenses to SEM pursuant to O.C.G.A. § 9-15-14. Plaintiff filed a notice of appeal and petition for discretionary appeal to the Georgia Court of Appeals on March 12, 2012. (Doc. 42-1). On April 20, 2012, the Court of Appeals issued an order denying Plaintiff's application for discretionary appeal. (Doc. 44-1). Under Georgia law, the denial of Plaintiff's application for discretionary appeal operates as an adjudication on the merits of the underlying order. Accordingly, I find that the Gwinnett County Order was a final judgment on the merits of SEM's motion for attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 9-15-14. See Lops v. Lops, 140 F.3d 927, 938 (11th Cir. 1998)("[W]e recognize that under Georgia law[,] finality for preclusion purposes may ... be measured by the same standard as finality for appealability purposes.").

### 5.    Court of Competent Jurisdiction

Finally, Plaintiff argues that the Gwinnett County Superior Court did not have jurisdiction to enter its Order or make substantive findings of fact. Plaintiff's argument, however, is not supported by Georgia law. The Georgia Court of Appeals has held that Georgia trial courts have jurisdiction to rule on motions for attorney's fees under O.C.G.A. § 9-15-14 that are filed after the voluntary dismissal of an action. See Harris v. Werner, 278 Ga. App. 166, 167-68, 628 S.E.2d 230, 231-32 (2006)(concluding that

20

the refiling of an action after a party has timely moved for attorney fees and costs but before the original court has had the opportunity to rule does not divest the original court of jurisdiction to decide the motion).

For the reasons stated, I find that Defendants have met their burden to demonstrate that collateral estoppel applies and the Court should give preclusive effect to the Gwinnett County Superior Court Order.

## V. <u>FEDERAL LAWSUIT</u>

**A.    <u>Plaintiff's Federal Claims Against SEM</u>**

**1.    TILA Claim (Count One)[4]**

In Count One of Plaintiff's complaint, Plaintiff alleges that SEM violated TILA by failing to timely provide TILA's required mortgage disclosures to Plaintiff.  (Compl. ¶¶ 46, 48, 50-51).  TILA covers consumer credit transactions defined as those "primarily for personal, family or household purposes."  15 U.S.C. § 1602(i).  TILA exempts

---

[4] The heading of Count One refers to TILA and also the "Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, July 21, 2010, 124 Stat. 1376." In addition, the heading has a footnote (Fn. 4) directing the reader to "*See also Mortgage Disclosure Improvement Act* and *Housing and Economic Recovery Act* of 2008, Pub. L. No. 110-289; § 2502(a), 122 Stat. 2654 (to be codified at 15 U.S.C. § 1638 (b)(2); 74 Fed. Reg. 23.289) and the *Mortgage Reform and Anti-Predatory Lending Act*, Pub.L. 111-203, Title XIV, § 1400 *et seq*." (Doc. 1, Compl., at 14). The complaint, however, fails to explain how the cited acts provide Plaintiff with a cause of action or relate to Plaintiff's claim(s). Accordingly, the Court will assume that Plaintiff did not intend to assert a separate cause of action under these laws.

21

transactions involving extensions of credit primarily for business or commercial purposes. 15 U.S.C. § 1603(1). The Gwinnett County Superior Court found that Plaintiff's Loan was for investment or business purposes, and therefore TILA did not apply to Plaintiff's Loan. (Doc. 35-2 at 4). Because the Georgia state court concluded that Plaintiff's Loan was for investment or business purposes to which TILA does not apply, Plaintiff may not re-litigate the issue of whether Plaintiff obtained the Loan "primarily for personal purposes," subject to TILA.[5] Accordingly, I recommend that SEM's motion to dismiss Plaintiff's Count One claim under TILA be granted.

### 2. RESPA Claim (Count Two)

In Count Two of Plaintiff's complaint, Plaintiff alleges that SEM violated RESPA, *inter alia*, by failing to comply with RESPA's transfer and Qualified Written Request provisions, 12 U.S.C. § 2605 (as amended by the Dodd-Frank Act on July 21, 2010). (Compl. ¶¶ 54-64). Section 2605 applies to the servicing of mortgage loans and administration of escrow accounts.

---

[5] Plaintiff argues that a loan for investment purposes may still be a consumer loan covered under TILA and RESPA. (See Compl. ¶¶ 30, 41-43; Doc. 22-1 at 14-16). This argument, however, is to no avail because, after concluding that the Loan was for investment or business purposes, the Gwinnett County Superior Court found that TILA did not apply to Plaintiff's Loan because the Loan fell under the express exemptions of the Act. (Doc. 35-2 at 4).

AO 72A
(Rev.8/82)

Like TILA, RESPA was enacted to protect consumers during the settlement process of residential real estate transactions. 12 U.S.C. § 2601. Also like TILA, RESPA exempts credit transactions involving extensions of credit that are primarily for business or commercial purposes. <u>See</u> 12 U.S.C. § 2606(a)(1). As discussed above, the Gwinnett County Superior Court found that Plaintiff's Loan involved an extension of credit that was for investment or business purposes. (<u>See</u> Doc. 35-2 at 4). Accordingly, for the same reasons that TILA does not apply to Plaintiff's Loan, RESPA is inapplicable. Plaintiff is estopped from re-litigating the issue of whether Plaintiff obtained the Loan "primarily for personal purposes." For the reasons stated, the doctrine of collateral estoppel bars Plaintiff's RESPA claim against SEM.

**B.     <u>State Law Claims Against SEM</u>**

In its Final Order, the Gwinnett County Superior Court specifically found that Plaintiff did not have valid claims for wrongful foreclosure, attempted wrongful foreclosure, breach of contract, or promissory estoppel. (Doc. 35-2 at 3-4). Thus, Plaintiff is collaterally estopped from re-litigating these claims. (<u>See</u> Compl., Section B, State Law Claims, Counts One, Two & Eight).

With regard to Plaintiff's Count Three claim for duress, Plaintiff states in his response brief in opposition to SEM's motion to dismiss that he did not intend to assert a separate claim for duress as an affirmative cause of action. Therefore, he requests

leave to voluntarily dismiss his claim of duress without prejudice. (Doc. 23-1, Pl.'s Resp. Br., § I at 17). In the alternative, Plaintiff states that he does not oppose the court dismissing his duress claim. Defendants have not objected to the dismissal. Accordingly, I recommend that the District Court dismiss Plaintiff's duress claim without prejudice.

In Count Four, Plaintiff alleges that SEM committed the offense of forgery. (Compl. at 34-35). However, there is no private right of action for forgery because forgery is a criminal offense under Georgia law. O.C.G.A. §§ 16-9-1 and 16-9-2. I therefore recommend that Plaintiff's Count Four claim for forgery be dismissed with prejudice for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

In Count Seven, Plaintiff alleges that SEM violated the Georgia Fair Lending Act, O.C.G.A. § 7-6A-1, *et seq.,* by applying and billing for improper, unauthorized, premature, duplicate and/or excess fees, assessments, interest and charges in conjunction with the subject Loan at issue in this case. However, the Act does not apply to a loan primarily for business or commercial purposes. See O.C.G.A. § 7-6A-2(8)(F). Therefore, I recommend that this cause of action be dismissed for the same reasons as the federal statutory causes of action.

AO 72A
(Rev.8/82)

With regard to the remaining state law claims, although not a mandatory requirement, "state claims should ordinarily be dismissed if all federal claims are eliminated before trial." Edwards v. Okaloosa County, 5 F.3d 1431, 1433 (11th Cir. 1993)(citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966)), *opinion modified on other grounds on denial of rehearing by* 23 F.3d 358 (11th Cir. 1994). If all federal claims are eliminated before trial, the four factors a district court should consider before exercising discretionary pendent jurisdiction – judicial economy, convenience, fairness, and comity – will ordinarily point toward dismissing the state claims as well. Id. Such will be the case here if the District Court adopts this Report and Recommendation or dismisses the federal claims on other grounds. Diversity of citizenship does not provide an independent basis for subject matter jurisdiction, given the lack of complete diversity between the parties. See 28 U.S.C. § 1332.

Given my recommendation that Plaintiff's federal claims against SEM be dismissed, I further recommend that the court exercise its discretion to decline supplemental jurisdiction over Plaintiff's remaining state law claims and dismiss the claims without prejudice. Gibbs, 383 U.S. at 726 (dismissal of state law claims strongly encouraged when federal law claims are dismissed prior to trial).

25

### C.    Plaintiff's FDCPA Claim Against TOKN

In Section C of Plaintiff's complaint, Plaintiff alleges that TOKN violated sections 1692e, 1692f, and 1692g of the Fair Debt Collection Practices Act on at least two occasions by sending demand letters to Plaintiff that falsely and erroneously misrepresented the character, amount and/or status of the debt at issue in this case, and by threatening foreclosure on Plaintiff's Loan even though SEM had no present right to possession of the Property.  (Compl. ¶¶ 109-113).

"[T]he FDCPA applies only to consumer debts and obligations; it does not apply to transactions having a business or commercial purpose."  Frazer v. IPM Corp. of Brevard, Inc., 767 F. Supp. 2d 1369, 1378 (N.D. Ga. 2011)(citations omitted).  Plaintiff has argued that "the basic principles and definitions of 'debt' and 'consumer' as set out in TILA are also applicable to making the same determinations under the FDCPA." (Doc. 22-1, Pl.'s Resp. Br., at 14).  In his Final Order, Judge Batchelor found that the Loan was for business purposes – rather than a consumer debt – and therefore the Loan was exempt from the application of TILA.  (Doc. 35-2).  TOKN argues that because that issue was determined in the previous action, Plaintiff may not re-litigate the issue, and consequently, Plaintiff's FDCPA claim against TOKN is barred by collateral estoppel.

AO 72A
(Rev.8/82)

As discussed above, the collateral estoppel doctrine precludes the re-adjudication of an issue that has "previously been litigated and adjudicated on the merits in another action between the same parties or their privies." Shields v. BellSouth Adver. & Publ'g Corp., 273 Ga. 774, 777, 545 S.E.2d 898, 900 (2001)(citations omitted). Thus, in order to have the preclusive benefit of the Gwinnett County Order, TOKN would need to be in privity with SEM in the Gwinnett County Lawsuit.

TOKN's potential liability in this federal action is based on Plaintiff's allegation that TOKN was SEM's attorney and acted in the capacity of a debt collector for SEM. (Id. ¶¶ 105-06). Plaintiff's only claim against TOKN is a claim under the FDCPA for wrongful statements and actions allegedly made by TOKN in attempting to collect the Loan on behalf of its client, SEM. Like TILA and RESPA, the FDCPA does not apply to loans for business purposes. See 15 U.S.C. § 1692a(5)(defining "debt" as an obligation of a consumer to pay money arising out of a transaction primarily for personal, family or household purposes); see also Lingo v. City of Albany Dep't of Cmty & Econ. Dev., 195 F. App'x 891, 893 (11th Cir. 2006)(holding that because the FDCPA applies to consumer loans rather than business loans, the statute did not apply to the loan obtained by the plaintiff, which was a loan for a business, not "personal, family, or household purposes."). Thus, if given preclusive effect, the Gwinnett County Superior Court's finding that the Loan made by SEM to Plaintiff was for investment or business

purposes, and that TILA did not apply, would require the dismissal of TOKN from this lawsuit.

For preclusion purposes, "privity" is "a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir. 2004). In Georgia, "Privies, for purposes of res judicata, are all persons who are represented by the parties and claim under them." 5 Ga. Procedure: *Verdict and Judgments* § 6:33. Privies in law are "so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." Id. For example, when a claim is made by a plaintiff purely on the grounds of respondeat superior, a judgment on the merits in favor of the allegedly negligent employee precludes the same claim by the same plaintiff against the employer. Id.

In the context of Plaintiff's federal litigation, the attorney-client relationship is similar to the employer-employee relationship in that the law firm's allegedly wrongful conduct is based on that of the client. TOKN's alleged wrongful conduct was its wrongful attempt to collect a *consumer* loan made by its client (SEM), which SEM accelerated and declared in default. If SEM did not attempt to collect a *consumer* loan, then neither did its attorney, TOKN.

28

While the Court has located no case directly on point, several cases that have written about collateral estoppel and preclusion in the context of the attorney-client relationship support the conclusion that there is privity in that relationship, and thus principles of preclusion apply. See, e.g., Weinberger v. Tucker, 510 F.3d 486, 493 (4th Cir. 2007)("Courts have held that the attorney-client relationship itself establishes privity")(citing Plotner v. AT&T Corp., 224 F.3d 1161, 1169 (10th Cir. 2000)); Henry v. Farmer City State Bank, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of res judicata.")(citation omitted); Verhagen v. Arroyo, 552 So. 2d 1162, 1164 (Fla. Dist. Ct. App. 1989)(affirming dismissal of case against attorneys on grounds of collateral estoppel where previous case by same plaintiff against attorneys' clients, based on the same agreement, had been dismissed); see also 47 Am. Jur. 2d *Judgments* § 617.

Here, TOKN was counsel to SEM in connection with the subject Loan at issue in both of Plaintiff's lawsuits and is alleged by Plaintiff to have been acting as counsel for SEM when the alleged wrong acts were committed. In addition, the lawsuits are based on the same factual background. For these reasons and the reasons discussed above, I find that TOKN was, for collateral estoppel purposes, in privity with SEM in the

Gwinnett County action, and the Order in favor of SEM may be used defensively by TOKN.

The Order concluded that the Loan was for a business purpose. Thus, Plaintiff is estopped from re-litigating the issue. For the reasons stated, I recommend that Plaintiff's FDCPA claim against TOKN be dismissed under principles of collateral estoppel.

## VI.  <u>CONCLUSION</u>

For the reasons discussed above, it is hereby **ORDERED** that Plaintiff's Motion to Exceed Page Limitations (Doc. 21) is **GRANTED**; Plaintiff's Motion to Convert Motions to Dismiss to Motions for Summary Judgment (Doc. 30) is **DENIED**; Plaintiff's Motion to Strike (Doc. 37) Motions to Supplement is **DENIED**; Plaintiff's Motion for Leave to File Notice of Supplemental Authority (Doc. 45) is **GRANTED**; and Defendants' Motions to Supplement Motions to Dismiss (Docs. 35, 36) are **GRANTED**.

For all the reasons stated, I **RECOMMEND** the following:

> (1)    that Defendants' Motions to Dismiss (Docs. 5, 10) be **GRANTED IN PART**; specifically,

> (2)    that all federal claims against both Defendants and the following state law claims against SEM be **DISMISSED WITH PREJUDICE**: wrongful foreclosure, attempted wrongful foreclosure, breach of contract, promissory

AO 72A
(Rev.8/82)

estoppel, forgery, and violation of the Georgia Fair Lending Act; and

(3)     that the District Court decline supplemental jurisdiction over Plaintiff's remaining state law claims against SEM and **DISMISS** the claims **WITHOUT PREJUDICE**.

**IT IS SO RECOMMENDED and ORDERED**, this 26th day of July, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)